(Slip Opinion)

# Detailing Attorneys to the Department of Justice to Serve as Immigration Judges and Special Assistant United States Attorneys

The Department of War may detail attorneys to serve as immigration judges on a reimbursable basis. The Department may also detail attorneys to serve as Special Assistant United States Attorneys on a non-reimbursable basis so long as a purpose of the detail is to provide training.

The Posse Comitatus Act does not preclude the use of military attorneys as immigration judges or Special Assistant United States Attorneys provided the details occur on a full-time basis and the detailees operate fully under civilian control and supervision.

October 23, 2025

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF WAR

You asked whether the Secretary of War ("Secretary") may detail attorneys, including military lawyers, to temporarily assist the Attorney General in addressing two different Executive Branch priorities: promptly adjudicating immigration cases and conducting criminal prosecutions in the District of Columbia. Although the analysis varies slightly between the two situations, we advised that the Secretary may send, and the Attorney General may receive, personnel, including military personnel, to serve on detail as temporary immigration judges ("IJs") or as Special Assistant United States Attorneys ("SAUSAs"), subject to certain conditions. This memorandum memorializes the basis for the advice we gave you.

Our analysis proceeds in five parts. After a brief introduction regarding the nature of the Secretary's assistance to the Attorney General, *see* Part I, Part II clarifies why the Secretary has the authority to send, and the Attorney General has the authority to receive, the detailees. Part III explains that, under the facts you have presented to us, detailees may serve as SAUSAs on a non-reimbursable basis, but details to IJ positions should be reimbursable, consistent with the Economy Act, 31 U.S.C. § 1535. Part IV demonstrates that the Posse Comitatus Act ("PCA"), 18 U.S.C. § 1385, does not preclude use of military attorneys in either capacity because the details of military attorneys will occur on a full-time basis and the detailees will operate fully under civilian supervision for the duration of the detail. Part V provides a brief summary of our conclusions.

## I.

In his efforts to make America safe and the border secure, the President ordered several initiatives that have increased demands on the existing staffing resources of the Department of Justice ("DOJ"). Two such initiatives are relevant here: addressing the backlog of immigration cases caused by the migration crisis at the Nation's border and prosecuting those who have participated in a wave of violent crime in the Nation's capital. Consistent with the wide ambit of these initiatives, DOJ officials requested that the Secretary detail personnel to assist in each of these two endeavors.

*First*, on August 23, 2025, the Executive Office for Immigration Review ("EOIR") requested that the Secretary detail up to 600 lawyers to DOJ to serve as temporary IJs for a period not to exceed 179 days. *See* Memorandum for Colonel Anthony Fuscellaro, Executive Secretary, Department of War, from Sirce E. Owen, Acting Director, Executive Office for Immigration Review, Department of Justice, *Re: Request for Department of Defense Assistance* (Aug. 23, 2025) ("EOIR Request"). Each detailee's service would be renewable, but all 600 would not serve simultaneously. *See id.* To the contrary, the request contemplated that the details would occur in phased cohorts of up to 150 attorneys. *See id.*

The request made clear that the attorneys would not perform the functions of their Department of War ("DOW") position of record while on detail. *Id.* Instead, detailees would operate on a full-time basis within DOJ, function in an entirely civilian capacity, and work under the supervision of DOJ officials. *Id.* Moreover, they would receive all necessary instructions and training on presiding over various types of immigration court proceedings from experienced DOJ personnel. *Id.* Finally, EOIR would reimburse DOW for the salaries and expenses of these detailed lawyers. *Id.*

You have advised that, to fulfill this request, each branch of the armed forces was asked to identify 100 possible candidates from among civilian attorneys it employs, Judge Advocates on active duty, and reservists available for active duty. The remainder will be members of the National Guard, who will be placed into federal service.

*Second*, and roughly contemporaneously, the United States Attorney for the District of Columbia requested that the Secretary detail 20 attorneys to

serve as SAUSAs and assist in prosecuting misdemeanors in the Nation's capital. *See* Memorandum for Colonel Anthony Fuscellaro, Executive Secretary, Department of War, from Jeanine Ferris Pirro, United States Attorney, District of Columbia, *Re: Request for Assistance from the Department of Defense in support of Executive Order 14252, Making the District of Columbia Safe and Beautiful* at 1 (Aug. 18, 2025) ("USADC Request"). These details are expected to last seven to ten months. *See id.* Unlike the IJs, however, the detail of lawyers to SAUSA positions is on a non-reimbursable basis. This request was made pursuant to a longstanding program in which lawyers are detailed to U.S. Attorneys' offices in and around federal military installations—of which there are several in Washington, D.C.—in order to receive valuable training and provide additional support to local prosecutors.[1] *See id.* at 2 (noting that "[m]any agencies throughout the federal government regularly send attorneys to [the District of Columbia United States Attorney's] SAUSA program to enhance their attorneys' litigation and courtroom skills"). Individual memoranda of understanding for these details were issued pursuant to those programs.

## II.

Federal law permits interagency details of lawyers, including military lawyers, to serve as either SAUSAs or temporary IJs. The precise method of doing so may vary slightly, however, between the two programs.

## A.

The Secretary has broad discretion to detail personnel to other federal agencies to serve a federal purpose, subject to the limitations of appropriations law, *infra* Part III, and for military personnel, the PCA, *infra* Part IV.[2] For reimbursable details, the Economy Act permits an agency to place

---

[1] *See, e.g.*, Memorandum from David G. Wilson, Commander, Naval Legal Service Command, *Re: Naval Legal Service Command Support to United States Attorney's Office Prosecution in Federal Magistrate Court* (July 22, 2025).

[2] The Secretary has indicated that members of the National Guard are among those he intends to detail to DOJ as either SAUSAs or IJs. Although National Guard members are ordinarily under state control, DOW personnel have indicated that they will invoke standard procedures to bring the Guardsmen into title 10 duty status under the U.S. Code.

an order with another agency for goods or services, provided in relevant part that "the head of the ordering agency or unit decides the order is in the best interest of the United States Government," the "services cannot be provided by contract as conveniently or cheaply by a commercial enterprise," and the fulfilling agency is "able to provide or get by contract" the requested goods or services. 31 U.S.C. § 1535(a). Here, DOW policy confirms that the Department may fulfill such requests "when they promote the increased effectiveness of the U.S. Government" and conform to the requirements of the Economy Act. Dep't of Defense Instruction 1000.17, para. 3(a)–(b) (Apr. 26, 2022) ("DoDI"). Consistent with the foregoing, DOW has long permitted the reimbursable detail of personnel, including service members, to other agencies. *See Assignment of Army Lawyers to the Department of Justice*, 10 Op. O.L.C. 115, 117 (1986) ("*Army Lawyers*"). For non-reimbursable details, both this Office and the Government Accountability Office ("GAO") have historically recognized that agencies may also enter non-reimbursable detail arrangements under certain circumstances. *See id.* at 118–19 n.4; 64 Comp. Gen. 370, 380 (1985).

## B.

Just as the Secretary has the authority to send detailees, the Attorney General has authority to receive them. The Economy Act authorizes the Attorney General to accept detailees consistent with the terms of that statute, and section 530C of United States Code title 28 underscores that the Attorney General may "receiv[e] details of personnel [from] other branches or agencies of the Federal Government, on a reimbursable, partially-reimbursable, or nonreimbursable basis." 28 U.S.C. § 530C(a)(2). Statutory and regulatory authorities confirm that the Attorney General may accept the detailed military personnel to serve as either IJs or SAUSAs.

---

Once brought into federal service, National Guard members may be detailed in the same manner as other DOW personnel, subject to the constraints identified herein.

**1.**

Generally speaking, the Attorney General has broad authority to name attorneys to serve as IJs. *See* 8 U.S.C. § 1101(b)(4) (defining IJ as "an attorney whom the Attorney General appoints as an administrative judge within [EOIR]"); *id.* § 1103(g) (describing the Attorney General's broad authorities and functions over "laws relating to . . . immigration"); *see also* 8 C.F.R. § 1003.10(a) (2025). The current regulatory scheme also permits the EOIR Director to designate or select "any attorney" as a temporary IJ, with the approval of the Attorney General. *Id.* § 1003.10(e)(1) (2025).

DOJ regulations impose certain eligibility requirements for service as a temporary IJ. Until recently, temporary IJs could only be pulled from "former Board [of Immigration Appeals] members, former immigration judges, administrative law judges employed within or retired from EOIR, . . . administrative law judges from other Executive Branch agencies," and "Department of Justice attorneys with at least 10 years of legal experience in the field of immigration law." Designation of Temporary Immigration Judges, 79 Fed. Reg. 39953, 39956 (July 11, 2014). Recently, the regulation was broadened to permit "any attorney" to act as a temporary IJ, which "matches the only regulatory requirement the Department places on the hiring of permanent IJs." Designation of Temporary Immigration Judges, 90 Fed. Reg. 41883, 41886 (Aug. 28, 2025). Under the revised regulations, then, the Attorney General may approve the details of attorneys from other agencies to serve as temporary IJs "for renewable terms not to exceed six months, subject to all applicable statutory and regulatory limitations on the temporary service." 8 C.F.R. § 1003.10(e)(1) (2025).

**2.**

We concluded nearly forty years ago that 28 U.S.C. § 543 permits the Attorney General to assign lawyers from other federal agencies to serve as SAUSAs. *See Army Lawyers*, 10 Op. O.L.C. at 117. Because we have previously explained our reasoning in detail, we do not repeat that analysis here. To summarize that reasoning: Although section 516 of title 28 "reserves to officers of the Department of Justice the conduct of litigation in which the United States . . . is a party," *id.* (citing 28 U.S.C.

§ 516), the Attorney General has statutory authority to "appoint attorneys to assist United States Attorneys 'when the public interest so requires.'" *Id.* (quoting 28 U.S.C. § 543(a)). This provision allows DOJ to assign personnel, including military lawyers, to serve as SAUSAs while on detail to DOJ.

True, the relevant statutory framework has been amended in the intervening decades, but not in a way that affects our analysis in this context. *See* Indian Arts and Crafts Amendments Act of 2010, Pub. L. No. 111-211, § 213(a)(2), 124 Stat 2258, 2268 (noting that the Attorney General should consult with tribal justice officials when she appoints prosecutors to serve in Indian country). As a result, what we said in 1986 remains true today: The Attorney General may, consistent with her obligation to oversee the litigation of the United States, seek and accept assistance from lawyers on detail. *See Army Lawyers*, 10 Op. O.L.C. at 117 & n.2 (citing 28 U.S.C. §§ 516, 543).

## III.

Having concluded that the Secretary has the authority to provide, and the Attorney General the authority to accept, assistance in the form of detailed lawyers, a question arises about which department should pay the detailees' salaries during the course of their details. Based on the information that we have received, we conclude that it is legally permissible for the Secretary to detail attorneys to serve as SAUSAs on either a reimbursable or a non-reimbursable basis, but that the Secretary should detail attorneys to IJ positions on a reimbursable basis under the Economy Act.

## A.

As a general matter, an agency that accepts the services of another agency's personnel must reimburse the loaning agency. *See Army Lawyers*, 10 Op. O.L.C. at 119. Absent express statutory authorization or the application of an exception to this general rule, the anti-augmentation principle prohibits non-reimbursable arrangements. The anti-augmentation principle derives from two federal statutes. *First*, the Anti-Deficiency Act provides (in relevant part) that "an officer or employee of the United States Government . . . may not . . . make or authorize an expenditure or obligation exceeding an amount available in

an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a)(1). *Second*, the Purpose Act requires that appropriations "be applied only to the objects for which the appropriations were made." *Id.* § 1301(a). Together, these two statutes provide that one agency cannot leverage or "augment" its appropriation by using the resources of another agency without statutory authorization—including the use of non-reimbursed services by another agency's personnel. *See* 64 Comp. Gen. at 380–81; *Army Lawyers*, 10 Op. O.L.C. at 118; *accord* DoDI 1000.17, para. 3(b) (implementing this instruction).

Both GAO and our Office have long recognized, however, that "a loaning agency may authorize nonreimbursable details involving [1] 'a matter [that is] similar or related to matters ordinarily handled by the loaning agency and [2] will aid the loaning agency in accomplishing a purpose for which its appropriations are provided.'" *Reimbursement for Detail of Judge Advocate General Corps Personnel to a United States Attorney's Office*, 13 Op. O.L.C. 188, 189 (1989) ("*Reimbursement for Detail*") (second alteration in original) (quoting 64 Comp. Gen. at 380). Here, DOW's longstanding instructions also reflect this exception, allowing "[n]on-reimbursable details [to] be executed" if "the employee will be performing functions consistent with those for which [Department] funds are appropriated and the greater benefit of the detail accrues to the [Department]." DoDI 1000.17, para 3(b)(1).

Nearly four decades ago, we evaluated an arrangement for the detail of military lawyers to DOJ to prosecute District of Columbia drug crimes. *See Reimbursement of Detail*, 13 Op. O.L.C. at 190. We concluded that the particular details at issue needed to be reimbursable, notwithstanding the "long history of maintaining a nonreimbursable Specials Program which involves the assignment of attorney personnel from various federal agencies to this Office for a period of four to six months." *Id.* The key difference between the two, we said, was whether the details had a training purpose: "While the DCUSA doubtless also receive[d] a benefit from the detail of attorneys under the Specials Program, the primary *purpose* of the program appear[ed] to be for the training of the detailed attorneys." *Id.* (emphasis in original). The drug prosecution program at issue in that opinion, by contrast, did "not appear to be for the purpose of training." *Id.* at 191.

Although we did not definitively opine at the time on "the validity of the Specials Program," *id.* at 190 n.5, we agree with that opinion's suggestion that if a detail's "primary purpose" is indeed training, the detail may proceed on a non-reimbursable basis. *Id.* at 190. For example, if the sending agency litigates or participates in litigating cases and if the detail will improve the attorneys' litigation skills, then the detail may advance a primary purpose of the sending agency's appropriation: training litigators. *See id.* at 189. As we have explained, "a loaning agency may authorize nonreimbursable details" that "'will aid the loaning agency in accomplishing a purpose for which its appropriations are provided.'" *Id.* (quoting 64 Comp. Gen. at 380).

We recognize that this position may seem to stand in some tension with an earlier statement from our Office that an exception "would generally not be" available to "detail . . . personnel from our client agencies to perform duties that can only be performed by officers of" DOJ. *Army Lawyers*, 10 Op. O.L.C. at 118. That opinion, however, did not consider the possibility of a training rationale for such a detail. For the reasons described in our subsequent opinion, *see Reimbursement for Detail*, 13 Op. O.L.C. at 189, a non-reimbursable detail to DOJ is permissible so long as a purpose of the detail is to provide the detailees with significant training opportunities.

**B.**

Applying those principles here, the Secretary could reasonably conclude that a purpose of the SAUSA details is to provide valuable training that litigators can apply to their ordinarily assigned duties upon the conclusion of the detail. Thus, the reasoning of our prior opinion would support the decision to detail attorneys on a non-reimbursable basis. You have advised us that the detailees are litigators, and intensive training and litigation work as a SAUSA could improve those litigation skills. *Cf. id.* at 191 (finding that the drug prosecution details did "not appear to be for the purpose of training" in part because they "involve[d] the reassignment of relatively experienced attorneys" and the nature of the work was not "directly related to more than a small fraction of the work customarily done by" the detailed attorneys). The detail is expected to include a "Basic Training Course, an excellent blend of intense academic classes

(e.g., evidence, discovery), trial skills, and hands-on experience, including mock trials." USADC Request at 2. As noted earlier, the program is longstanding, and significantly "enhance[s] [the detailees'] litigation and courtroom skills." *Id.* This is true for prospective detailees of a variety of existing experience levels.

By contrast, you have not identified a training rationale for the temporary IJ details. We understand that many of the potential detailees are not currently working as administrative judges, nor are they especially likely to do so in the future. The adjudicatory skills gained through experience as an IJ may be helpful to their future legal practice only in the most general sense, and adjudicatory skills will not readily transfer with them upon their return to their prior positions. The detailees are also unlikely to obtain substantive knowledge that will be useful upon their return to their position of record, given the highly specialized nature of immigration law. "The removal of an alien is a civil matter," *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018), and the potential detailees will rarely, if ever, encounter civil immigration law or enforcement in the ordinary course of their work. Based on the information provided, details to IJ positions would be difficult to justify under the training rationale. Accordingly, the proposed details to temporary IJ positions should be on a reimbursable basis, drawing from DOJ funds available for this purpose.[3]

## IV.

Finally, to the extent that some of the proposed detailees are military personnel, we consider how the PCA might affect the analysis. That statute prohibits anyone from "willfully us[ing] any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force as a posse comitatus or otherwise to execute the laws," "except in cases and under circumstances expressly authorized by the Constitution or Act of Congress." 18 U.S.C. § 1385. As set forth below, we conclude that the PCA

---

[3] Salaries must be reimbursed at the detailees' ordinary pay level, not the amount otherwise payable to an IJ. *See* 5 U.S.C. § 5535(b)(1) (providing that employees may not receive "additional pay or allowances for performing the duties of another employee"); Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 371(c), 110 Stat. 3009-546, 3009-646 (establishing a separate pay scale for IJs).

does not prohibit the proposed detailing of military lawyers to DOJ to serve as temporary IJs and SAUSAs under the specific circumstances of these programs.[4]

## A.

Our prior opinion assumed, without deciding, that "the litigation of civil and criminal cases constitutes the 'execution' of the law within the meaning of the [PCA]." *Army Lawyers*, 10 Op. O.L.C. at 121.[5] Nonetheless, even then we found that military lawyers could, in some circumstances, serve on details to DOJ. *See id.* We concluded that sending military lawyers to DOJ would not violate the PCA if the detailees (1) were assigned on a full-time basis to perform law enforcement functions in an entirely civilian capacity[6] (i.e., not performing those duties along with

---

[4] The same analysis applies for traditional military lawyers as well as National Guard lawyers who have been called up to title 10 duty status under the U.S. Code. *See Use of the National Guard to Support Drug Interdiction Efforts in the District of Columbia*, 13 Op. O.L.C. 91, 92 (1989) (concluding that the PCA "applies to a National Guard . . . when it has been put into federal service").

[5] There are strong arguments that working as an IJ or a SAUSA would not be considered the use of the military as a posse comitatus or "otherwise to execute the law" within the meaning of the PCA. *See* 18 U.S.C. § 1385. We have generally interpreted the phrase "or otherwise to execute the law" as having a relatively narrow meaning that focuses on the use of coercive physical force in the enforcement of laws. *See Military Support for Customs and Border Protection Along the Southern Border Under the Posse Comitatus Act*, 45 Op. O.L.C. __, at *4–6, *17 (Jan. 19, 2021) (applying three different tests); *see also Fischer v. United States*, 603 U.S. 480, 487 (2024) ("One way to discern the reach of an 'otherwise' clause is to look for guidance from whatever examples come before it."). In other words, as used by the PCA, the phrase "execute the law" does not encompass the entire scope of law execution performed by the Executive Branch. *See* Memorandum for Jo Ann Harris, Assistant Attorney General, Criminal Division, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Use of Military Personnel for Monitoring Electronic Surveillance* at 9 (Apr. 5, 1994) (noting that there are "persuasive indications that the PCA is not intended" to cover "activity that does not entail *coercion, regulation, or personal contact with civilian subjects*" (emphasis in original)). We assume without deciding, however, that working as an IJ or SAUSA constitutes the execution of the law within the meaning of the PCA for purposes of this opinion.

[6] As a prudent measure to make clear the capacity in which the detailee is acting, detailees should refrain from wearing military uniforms throughout the duration of their detail.

their regularly assigned military duties); and (2) were supervised in the work related to their detail entirely by civilian supervisors (i.e., not by those in the military chain of command). *See id.* at 121 & n.9. The request for IJs we reviewed, as well as the memorandum of understanding concerning the SAUSAs, specifically contemplated and incorporated these two conditions. *See* EOIR Request at 1; *Memorandum of Understanding Between the United States Attorney's Office for the District of Columbia and the Department of Defense for the Detailing of Special Assistant United States Attorneys* at 2 (Sep. 3, 2025).

Which agency pays the salary of the military personnel while on detail has no bearing on whether the detailees are performing DOJ functions and remaining entirely subject to DOJ supervision. This conclusion makes sense considering the history and purpose of the PCA. The PCA reflects the "traditional and strong resistance of Americans to any military intrusion into civilian affairs," particularly in times of peace. *Laird v. Tatum*, 408 U.S. 1, 15 (1972). From Magna Carta and the Petition of Right to the Declaration of Independence and the Bill of Rights, Anglo-American law has strongly disfavored military intrusions into civilian life. *See* Jennifer K. Elsea, Cong. Rsch. Serv., R42659, *The Posse Comitatus Act and Related Matters: The Use of the Military to Execute Civilian Law* at 1–5 (updated Nov. 6, 2018) (describing the tradition). This tradition is rooted in the fear that the introduction of military power into civilian life threatens to induce violent episodes. *See, e.g.*, *id.* at 4 (describing the Boston Massacre as the direct result of "an independent military force [being] quartered among a disgruntled civilian population to police it"). By contrast, the particulars of how the military is financed have no bearing on that tradition. Whether a military officer is paid out of civilian or military coffers, filled alike by American taxpayers, has nothing to do with the potential for violent clashes between civilians and military forces operating domestically. The reimbursable or non-reimbursable nature of the details, in other words, does not impact the PCA analysis.

## B.

We have identified two potential counterarguments against our position, but neither changes our view. *First*, the PCA creates some tension

with the very exception to the non-augmentation principle discussed above that allows for non-reimbursable details. After all, to be detailed in a non-reimbursable capacity, the assignment must "'aid the loaning agency in accomplishing a purpose for which *its* appropriations are provided.'" *Reimbursement for Detail*, 13 Op. O.L.C. at 189 (emphasis added) (quoting 64 Comp. Gen. at 380). But in order to avoid application of the PCA, the detailees must be assigned on a full-time basis to perform *civilian* law enforcement functions. *See Army Lawyers*, 10 Op. O.L.C. at 121.

This argument ignores that the PCA turns not on membership in "the Army, the Navy, the Marine Corps, the Air Force, or the Space Force" but instead on the *use* of a part of one of those services "as a posse comitatus or otherwise to execute the laws." 18 U.S.C. § 1385. How personnel are being *used* requires an examination of a particular moment in time. *See supra* Part IV.A (focusing the inquiry on the activity performed, not the status of the officer performing the activity). That a detailee might *use* skills learned during the detail once he returns to his normally assigned military tasks does not mean that he was *being used* in a military capacity to execute the laws while he acquired those skills.

*Second*, some of the detailed military lawyers will remain subject to military discipline under the Uniform Code of Military Justice ("UCMJ") during their detail. For many of the same reasons described above, however, we have never deemed the UCMJ's application relevant to the PCA analysis. For example, the UCMJ covers arguably private conduct, *see* 10 U.S.C. § 934, and it continues to apply even when certain servicemembers are no longer in active service, *see, e.g.*, *id.* § 802(a)(4). We are aware of nothing in the text or context of the PCA that suggests that anyone who was at one point involved in military activity remains "part of" the armed forces within the meaning of the PCA. *See* 18 U.S.C. § 1385. To the contrary, that would have made little sense given that the PCA was enacted in the aftermath of the Civil War—when a substantial portion of the adult male population had served in the military in some capacity. *See* Nat'l Park Serv., *Civil War Facts: 1861–1865*, https://www.nps.gov/civilwar/facts.htm (last visited Sep. 10, 2025) (recording that the Union Army included 2.67 million enlistees out of a total population of 18.5 million).

## V.

In sum, we conclude that the Secretary may send, and the Attorney General may receive, details of lawyers to serve temporarily as IJs and SAUSAs as described above. The IJ details should be reimbursed while the SAUSA details may be non-reimbursable in this instance. Detailing military lawyers in either capacity does not violate the PCA, because the detailees are working on a full-time basis, in an entirely civilian capacity, under the supervision of civilian DOJ supervisors. Under our longstanding view, those conditions are sufficient to comply with the PCA's terms.

T. ELLIOT GAISER
*Assistant Attorney General*
*Office of Legal Counsel*
